# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### Case No. 16-23194-Civ-COOKE/TORRES

ANITA BARNWELL,

     Plaintiff,

vs.

DAVID J. SHULKIN,

     Defendant.

_____/

## ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Plaintiff Anita Barnwell ("Plaintiff") brings this action against Defendant David J. Shulkin, Secretary, United States Department of Veterans Affairs ("Defendant") under Title VII of the Civil Rights Act of 1964 ("Title VII"), 45 U.S.C. § 2000e *et seq.*, and the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.*, ("ADEA") to recover damages for alleged discrimination due to her age and race, as well as retaliation. *See* Am. Compl., ECF No. 9, ¶ 1. Defendant filed a Motion for Summary Judgment ("Defendant's Motion") (ECF No. 65), which contained within it a supporting Statement of Undisputed Material Facts. Plaintiff did not timely file a response and the time to do so has passed.[1] Therefore, Defendant's Motion for Summary Judgment is ripe for adjudication. I have reviewed Defendant's Motion for Summary Judgment, Defendant's Statement of Undisputed Material Facts and attached exhibits, the record, and the relevant legal authorities. For the reasons provided herein, Defendant's Motion for Summary Judgment is granted.

---

[1] The day before Plaintiff's response was due, Plaintiff filed a Motion to Stay Proceedings, or in the Alternative, Motion for Extension of Time to File Response to Defendant's Motion for Summary Judgment ("Motion to Stay") (ECF No. 67). Plaintiff's Motion to Stay was denied because counsel had not complied with Local Rule 7.1(a)(3) and because Plaintiff did not show good cause for the requested extension of time. *See* ECF No. 70. Plaintiff later filed a Notice re Defendant's Motion for Summary Judgment (ECF No. 72) which consisted only of exhibits; however, Defendant filed a Motion to Strike Plaintiff's Notice (ECF No. 73). Plaintiff never responded to the motion to strike, which was subsequently granted on October 13, 2017. *See* ECF No. 83. That same day, Plaintiff filed a Response to Defendant's Motion (ECF No. 84), seventy-one days after the deadline and seventeen days before trial. Defendant again moved to strike Plaintiff's response (ECF No. 89), and again, Plaintiff failed to respond to the motion. Plaintiff's response was stricken on October 24, 2017. *See* ECF No. 96.

# I. BACKGROUND

Plaintiff is an African American woman over the age of forty who began working at the Department of Veteran Affairs ("VA") in 1980 as a food service worker. Def.'s Statement of Undisputed Material Facts ("SMF"), ECF No. 65, ¶¶ 1–2.[2] In 1986, she moved to Medical Administration Services ("MAS") as a file clerk. *Id.*, at ¶ 3. She stayed in that position until 1989, when she became a medical support assistant. *Id.*, at ¶¶ 3–4. Around 5 years later, Plaintiff was promoted to a Medical Support Assistant Supervisor. *Id.*, at ¶ 4. In 2000, Plaintiff became a Supervisory Program Support Assistant, where she remained for approximately six years. *Id.* In 2006, Plaintiff was promoted to Assistant Chief, Ambulatory Care. *Id.*, at ¶ 5. She maintained that position through 2014. *Id.* During her time as Assistant Chief in 2009, Plaintiff performed two details of assistant chief for 120 days each. *Id.*, at ¶ 6; Pl.'s Depo., ECF No. 66-1, 10:22–12:3. For both details she was paid at a GS-9 level, which was higher than her current grade level. SMF, ¶ 6. Around that time, Roberta Watson served as Plaintiff's second-line supervisor. Pl.'s Depo., at 25:9–13. In June 2010, Ms. Watson spoke with Plaintiff about doing a detail in the Broward County Outpatient Clinic ("Clinic"). SMF, at ¶ 8. According to Ms. Watson, the Clinic was "exploding" and she needed someone to help bring it up to standards. *Id.* Sometime in May 2011, Plaintiff was in a meeting where she heard Ms. Watson say she wanted to get rid of the "dead wood." *Id.*, at ¶ 9; Pl.'s Depo., at 65:13–67:1. Plaintiff interpreted this as a reference to getting rid of people based on their advanced age, as many of the people in the meeting were getting ready to retire. Pl.'s Depo., at 65:13–67:1. In June 2011, Plaintiff received a pay increase, going from a GS-8 to a GS-9. SMF, ¶ 7.

Plaintiff did not actually go on the detail at the Clinic until November 2011. SMF*, at* ¶¶ 10, 12. A few days before she started the detail, she was given a memorandum that stated she would be detailed to the Clinic for ninety days to improve administrative processes at the Clinic. *Id.*, at ¶ 10; Pl.'s Depo., at 29:19–17. Plaintiff was also given a Request for Personnel Action indicating Plaintiff would be paid at the GS-11 level beginning November 21, 2011.

---

[2] Pursuant to subsection (b) of Local Rule 56.1 regarding Motions for Summary Judgment, all material facts set forth in the movant's statement will be deemed admitted unless controverted by the opposing party's statement, provided that the movant's statement is supported by evidence in the record. Defendant's statement of material facts is uncontroverted and is supported by evidence in the record; therefore, Defendant's statement of material facts are deemed admitted.

SMF, at ¶ 12. However, while the form listed the pay level as GS-11, the actual rate of pay listed on the form was the GS-9 salary, Plaintiff's existing pay grade. *Id.*, at ¶ 13. The form does not appear to have been approved by anyone in Human Resources at the VA and Plaintiff is unaware whether the form was ever approved. *Id.*, at ¶ 12; Ex. 3 to Pl.'s Depo. Plaintiff stayed on the detail at the Clinic well past the initial ninety-day time frame because she was gaining experience and was helping the VA with improving administrative processes. SMF, at ¶ 14. From 2011 to 2016, Plaintiff is not aware of anyone who went on a detail and was paid at a higher grade level, although she states it is not something that would be readily known. *Id.*, at ¶ 15; Pl. Depo., at 61:10–14.

In 2013, Plaintiff applied for the position of Chief of MAS in Miami, for which she interviewed, as well as the position of Clinic Coordinator in Fort Lauderdale, for which did not interview. SMF, at ¶ 16; Pl. Depo., at 97:4–99:25. Plaintiff was not selected for either position. SMF, at ¶ 16. The person selected to be the Chief of Medical Administrative Services was a white man, possibly in his thirties, and the person selected to be the Clinic Coordinator was a man in his thirties. Pl. Depo., at 64:11–19, 98:14–99:19. After Plaintiff was not selected for the position of Clinic Coordinator, she returned to the Miami VA office in August 2013. SMF, at ¶ 18; Pl. Depo., at 63:24–64:24.

On January 23, 2014, Plaintiff submitted a formal Complaint of Employment Discrimination with the VA, alleging that she was not properly paid at the GS-11 rate while on her detail at the Clinic in Broward because of discrimination on the basis of age and race. SMF, at ¶ 19; Ex. A, ECF No. 65-1, p. 3. In 2014, after filing her formal discrimination complaint, Jean Brooks, the Acting Chief of MAS, moved Plaintiff from an office to a cubicle to work on projects. SMF, at ¶ 21. According to Plaintiff, her office was then given to an intern. Pl. Depo. 73:18–25. In 2016, Plaintiff was reassigned to the Data Unit within MAS. SMF, at ¶ 22. Although her title changed to Program Analyst, she remained at the GS-9 level but was still assigned to a cubicle. *Id.* Ms. Brooks told Plaintiff she was reassigned because her current position, Assistant Chief, Ambulatory Care, was being eliminated or reclassified. *Id.*, at ¶ 23. The position was eliminated in 2016. *Id.* Plaintiff ultimately retired in 2016 as a Program Analyst after 36 years with the VA. *Id.*, at 25.

## II. LEGAL STANDARD

Summary judgment "shall be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is

no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Allen v. Tyson Foods, Inc.*, 121 F.3d 642 (11th Cir. 1997) (quoting Fed. R. Civ. P. 56(c)) (internal quotations omitted); *Damon v. Fleming Supermarkets of Florida, Inc.*, 196 F.3d 1354, 1358 (11th Cir. 1999). Thus, the entry of summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

"By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48 (1986) (emphasis in original). "As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* at 248. "For factual issues to be considered genuine, they must have a real basis in the record . . . mere conclusions and unsupported factual allegations are legally insufficient to defeat a summary judgment motion." *Ellis v. England,* 432 F.3d 1321, 1326 (11th Cir. 2005) (citations omitted).

"Even in an unopposed motion, the moving party still bears the burden of identifying [the evidence] which it believes demonstrates the absence of a genuine issue of material fact." *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1303 (11th Cir. 2009) (quoting *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986)). Further, the "district court need not *sua sponte* review all of the evidentiary materials on file at the time the motion is granted, but must ensure that the motion itself is supported by evidentiary materials." *United States v. 5800 SW 74th Ave.*, 363 F.3d 1099, 1101 (11th Cir. 2004). After review of the evidence, summary judgment is proper "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. In those cases, there is no genuine issue of material fact "since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 323.

### III.    DISCUSSION

In her Amended Complaint (ECF No. 9), Plaintiff alleges discrimination in Violation of Title VII of the Federal Civil Rights Act (Count I), Retaliation in Violation of Title VII of the Federal Civil Rights Act (Count II), and Discrimination in Violation of the Age Discrimination in Employment Act of 1967 (Count III). My Order on Defendant's Motion to Dismiss (ECF No. 76) limited Plaintiff's claims to the issue of whether Plaintiff's pay at the GS-9 level instead of the GS-11 level was discriminatory and whether the VA retaliated against Plaintiff for filing her EEOC complaint.

#### A.  Race and Age Discrimination

Defendant argues that Plaintiff has not established a prima facie case of race or age discrimination. I agree. "Under Title VII, it is unlawful for an employer to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of [her] race." *Archie v. Frank Cockrell Body Shop, Inc.*, 581 F. App'x 795, 798 (11th Cir. 2014) (citing 42 U.S.C. § 2000e–2(a)(1)). "A plaintiff establishes a prima facie case of discrimination by showing (1) [s]he belongs to a protected class; (2) [s]he was subjected to an adverse employment action; (3) [her] employer treated similarly situated employees outside of [her] class more favorably; and (4) [s]he was qualified to do the job." *Id.* (citing *McCann v. Tillman*, 526 F.3d 1370, 1373 (11th Cir. 2008). Courts generally apply the Title VII framework to determine if a plaintiff has established a prima facie case of discrimination under the ADEA. *See Reeves v. Sanderson Plumbing Prod., Inc.*, 530 U.S. 133, 141 (2000); *Cofield v. Goldkist, Inc.*, 267 F.3d 1264, 1267 (11th Cir. 2001). "The methods of presenting a prima facie case are not fixed; they are flexible and depend to a large degree upon the employment situation." *Thomas v. Miami Veterans Med. Ctr.*, 290 F. App'x 317, 319 (11th Cir. 2008).

As Defendant points out, Plaintiff has not brought forward any evidence to show that the VA treated similarly situated employees outside of her protected classes more favorably. The only comparison that can be drawn from evidence in the record involves two promotions for which Plaintiff applied but was not hired. SMF, at ¶ 16; Pl. Depo., at 97:4–99:25. The hired individuals were both in their thirties and one was white. Pl. Depo., at 64:11–19, 98:14–99:19. However, there is no indication that either individual was similarly situated to Plaintiff in terms of experience or qualifications, nor is there any connection between those individuals and Plaintiff's claim that she was paid at the GS-9 level rather than the GS-11

level. Plaintiff has not identified any other employees who went on a similar detail, performed substantially the same work, and were paid more than her, either within or without her protected class. The fact that Plaintiff had previously gone on details and received higher pay at the GS-9 level does not create an inference that the VA discriminated against Plaintiff by paying her at the GS-9 level while she was on the Broward detail. The failure to show similarly situated comparators is fatal to establishing a prima facie case of disparate treatment under the ADEA and Title VII. As such, Defendant is entitled to summary judgment on Counts I and III.

## B. Retaliation

Defendant also argues that Plaintiff has failed to establish a prima facie case of retaliation because Plaintiff cannot show an adverse action, nor can Plaintiff show a hostile work environment. Again, I agree with Defendant. Title VII prohibits retaliation against an employee "because [s]he has opposed any practice made an unlawful employment practice by [Title VII], or because [s]he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing [thereunder]." *Crawford v. Carroll*, 529 F.3d 961, 970 (11th Cir. 2008) (quoting 42 U.S.C. § 2000e–3(a)). There is no dispute that Plaintiff's filing of the EEOC complaint was protected activity under Title VII.

### a. Adverse Action

To establish a prima facie case of retaliation under Title VII, the employee must demonstrate "the following essential elements: (1) the employee was engaged in statutorily protected activity; (2) the employee suffered an adverse employment action; and (3) a causal link exists between the protected activity and the adverse employment action." *Furcron v. Mail Centers Plus, LLC*, 843 F.3d 1295, 1310 (11th Cir. 2016). To show an adverse action, an employee must establish an "ultimate employment decision," such as termination, failure to hire, or demotion, "or make some other showing of substantiality in the employment context . . . ." *Crawford*, 529 F.3d at 970. "[C]onduct falling short of an ultimate employment decision must, in some substantial way, 'alter[ ] the employee's compensation, terms, conditions, or privileges of employment, deprive him or her of employment opportunities, or adversely affect [ ] his or her status as an employee." *Id.* (quoting *Gupta v. Florida Board of Regents,* 212 F.3d 571, 587 (11th Cir.2000)). The alteration must be "'a *serious and material* change in the terms, conditions, or privileges of employment' to show an adverse employment action." *Id.*, at 970–71 (11th Cir. 2008) (quoting *Davis v. Town of Lake*

*Park, Fla.,* 245 F.3d 1232, 1239 (11th Cir.2001)). "[T]he antiretaliation provision . . . [does not] immunize that employee from those petty slights or minor annoyances that often take place at work and that all employees experience." *Palmer v. McDonald*, 624 F. App'x 699, 702 (11th Cir. 2015) (internal quotations omitted). "The actions must be likely to deter victims from complaining, [a]nd normally petty slights, minor annoyances, and simple lack of good manners will not create such deterrence." *Id.* (internal quotations omitted).

After filing her EEOC complaint in 2014, Plaintiff was moved from her office to a cubicle and was assigned to work on projects. SMF, at ¶ 21. In 2016, she was reassigned to the Data Unit as a Program Analyst. *Id.*, at ¶ 22. Plaintiff's pay remained at the GS-9 level throughout. *Id.* Ms. Brooks, the Acting Chief, told Plaintiff her former position was being eliminated or reclassified. *Id.*, at ¶ 23. The VA did in fact eliminate the position in 2016. *Id.* These actions do not rise to the level of a serious and material change. Moving from an office to a cubicle is clearly the type of petty slight or minor annoyance that all employees experience. Additionally, "the removal of [Plaintiff's] supervisory responsibilities and the shift of her post-reorganization duties to those more clerical are not the type of serious and material changes contemplated by *Davis.*" *Byrne v. Alabama Alcoholic Beverage Control Bd.*, 635 F. Supp. 2d 1281, 1292 (M.D. Ala. 2009) (citing *Davis*, 245 F.3d at 1239). Especially where Plaintiff did not suffer a reduction in pay, such a change in responsibility is not a serious and material change in the terms, conditions, or privileges of employment.[3]

### b. Hostile Work Environment[4]

Defendant also moves for summary judgment on Plaintiff's claim of hostile work environment. "[T]his circuit recognizes a cause of action for retaliatory hostile work environment." *Gowski v. Peake*, 682 F.3d 1299, 1312 (11th Cir. 2012).

> [T]o be actionable, this behavior must result in both an environment that a reasonable person would find hostile or abusive and an environment that the victim subjectively perceive[s] . . . to be abusive. In evaluating the objective severity of the harassment, this court looks at the totality of the circumstances and considers, among other things: (1) the

---

[3] Because I find that Plaintiff has not suffered an adverse action, I do not reach Defendant's argument that there is no causal link between Plaintiff's protected activity and Defendant's actions.

[4] In her Amended Complaint, Plaintiff alleged a hostile work environment claim under Title VII on the basis of race discrimination, as well as retaliatory hostile work environment. The only claim that remains is Plaintiff's retaliatory hostile work environment claim. *See* ECF No. 76.

> frequency of the conduct; (2) the severity of the conduct; (3) whether the conduct is physically threatening or humiliating, or a mere offensive utterance; and (4) whether the conduct unreasonably interferes with the employee's job performance. [W]hether an environment is 'hostile' or 'abusive' can be determined only by looking at all the circumstances.

*Id.* (internal quotations omitted). "[C]onduct must be extreme to amount to a change in the terms and conditions of employment." *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998).

Plaintiff has not brought forward any facts to show a hostile work environment other than the actions discussed above—Plaintiff being moved from an office to a cubicle, being reassigned to the Data Unit, and being reclassified to a Program Analyst after her former position was terminated. The only other possible action that could constitute retaliation or discrimination is the comment from Plaintiff's supervisor, Ms. Watson, where she said she wanted to get rid of all the "dead wood." SMF, ¶ 9; Pl.'s Depo., at 65:13–67:1. Plaintiff interpreted this comment to be discriminatory based on her age, since other people in the department were getting ready to retire. Pl.'s Depo., at 65:13–67:1. However, this statement was made prior to Plaintiff filing her EEOC charge and cannot be part of her retaliation claim. Taken separately, these acts do not constitute adverse action. Taken collectively, they do not amount to a "workplace . . . permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Gowski v. Peake*, 682 F.3d 1299, 1311 (11th Cir. 2012). Defendant is entitled to summary judgment on Count II of Plaintiff's Amended Complaint.

## IV.    CONCLUSION

Having reviewed the arguments and the record, Plaintiff has failed to establish a prima facie case of race discrimination or retaliation under Title VII of the Civil Rights Act of 1964, nor has Plaintiff established a prima facie case under the ADEA. Therefore, as explained above, summary judgment in favor of Defendant is appropriate.

Accordingly, it is **ORDERED and ADJUDGED** that Defendant's Motion for Summary Judgment (ECF No. 65) is **GRANTED**. Plaintiff's Complaint is **DISMISSED**. A separate judgment pursuant to Rule 58 of the Federal Rules of Civil Procedure shall issue concurrently.

**DONE AND ORDERED** in chambers at Miami, Florida, this 25th day of October 2017.

_Marcia G. Cooke_

MARCIA G. COOKE
United States District Judge

Copies furnished to:
_Edwin G. Torres, U.S. Magistrate Judge_
_Counsel of record_